UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |                    |
|--------------------------|--------------------|
| UNITED STATES OF AMERICA |                    |
| v.                       | No. 14CR 10067 RWZ |
| FATHALLA MASHALI,        |                    |
| Defendant.               |                    |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR REVOCATION OF MAGISTRATE JUDGE'S ORDER OF DETENTION

On March 24, 2014, the defendant, Fathalla Mashali, by and through undersigned counsel, moved pursuant, inter alia, to 18U.S.C. § 3145(b), for an order of this Court revoking Magistrate Judge Leo T. Sorokin's (Sorokin or Magistrate) Order of Detention Pending Trial, and to establish appropriate conditions of release.[1] In support of thereof, the defendant incorporates by reference his earlier filed "Motion for Release on Conditions and Incorporated Memorandum of Law", which is attached hereto on Exhibit 1, and further attaches various affidavits and letters from individuals who have the best knowledge of the defendant and his business affairs, attached hereto as Exhibits 2-5, and which forcefully contradict the reasoning and conclusions of the Magistrate's Memorandum and Order of Detention.[2]

---

[1] It is axiomatic that when a defendant seeks review of a magistrate's order of detention, the district court is bound to review the matter de novo, and undertake a complete review of the matter for the purpose of arriving at its own "independent conclusion." See United States v. Duncan, 897 F.Supp 688, 689-90 (N.D.N.Y., 1995) (citing United States v. Leon, 766 F2d 77, 80 (2d Cir. 1985), as well as multiple other cases authorities, all also cited in the United States Attorney's Criminal Resource Manuel, generally §26.

[2] It should be noted that after a relatively lengthy contested hearing relative to detention/release, Magistrate Sorokin announced that he was inclined to release the defendant on conditions, but that there might be some additional conditions other than those suggested by undersigned counsel. He obviously changed his mind prior to issuing his opinion, which mandates detention.

The Magistrate's hearing involved a Criminal Complaint dated February 8, 2014, supported by an affidavit of FBI Special Agent Clayton Phelps, who testified and was cross examined. It alleges Health Care Fraud, in violation of 18 U.S.C. 1347, asserting that from February 2011 to February 2013, the defendant willfully and knowingly participated in a scheme to defraud a "health care benefit program" in connection with the delivery of, or a payment for, health care benefits or services. On March 13, 2014, an indictment alleging Health Care Fraud (18 U.S.C. §1347), and Aiding and Abetting (18 U.S.C. §2) was returned against the defendant, who has been arraigned. The allegations in the Indictment in no way reflect a broader or more extensive set of criminal charges than that which is contained in the Criminal Complaint and many of the terms that were obliquely mentioned/inferred at the Magistrate's hearing – bankruptcy fraud or irregularity, a level of dispensing pain killers amounting to a violation of Controlled or Scheduled Substances Act - which potentially tainted the Magistrate's deliberative mind, are not to be found in the Indictment. Thus, there would be no reason to conclude that this Indictment presents a picture of a defendant who poses a greater risk of flight than the defendant described in the Criminal Complaint – or at the Detention Hearing before the Magistrate, if anything, given the absence of allegations other than health care fraud, the reverse would actually be true.

In his Motion for Release on Conditions before the Magistrate, the defendant suggested that any reasonable analysis of 18 U.S.C. 3142 facts militated in favor of release on conditions rather than detention. As mentioned, supra footnote 2, the Magistrate initially indicated that he agreed that the detention/release calculus most probably would result in the release of Dr. Mashali on some combination of conditions, although perhaps involving some conditions

2

additional to those proposed by Mashali. Dr. Mashali, through counsel, had proposed a package of conditions which included inter alia, maintaining his Massachusetts residence, wearing a GPS electronic monitoring bracelet, surrendering his passport and not obtaining another, checking in with Pre-Trial Services as often as requested by phone or in person, agreeing to unannounced visits/searches of his home, random drug testing, to only visit with pre-approved individuals, and to execute an appearance bond in the amount of $2 million to be collateralized by his residence in Dover, Massachusetts, which had an equity value of approximately $2 million, and which was virtually the only asset of the defendant with any value. Additionally, his wife, Dr. Noha Mashali, a practicing Doctor of Periodontal Dentistry, agreed to act as a third party custodian/guarantor and report any violation of the conditions of release.

The Magistrate's Order of Detention is predicated upon various findings of fact. As will be more fully discussed, infra, it was apparently largely based on the uncorroborated and certainly unexpected testimony of the FBI Special Agent, Clayton Phelps, that portrays a false picture of the defendant and particularly of his financial circumstances, and are forcefully rebutted by the affidavits and letters contained in Exhibit 2-5 attached hereto, and any testimony that will be adduced at a hearing before this court by the affidavits.

Magistrate Sorokin actually acknowledges in his Memorandum and Order that absent some extraordinary facts, it would be expected that the ordinary situation of a long-time Massachusetts resident (approximately 30 years) facing a non-violent criminal charge would be to be released on conditions. (See Sorokin Memorandum & Order at last para. of p.6.) As will be discussed infra, there are no such objectively demonstrative "extraordinary" circumstances

3

here, to deviate from the norm, particularly where such an individual, here Dr. Mashali, and the usual expectation that Dr. Mashali who also has no criminal record, no history of domestic restraining orders or domestic violence, who is an honorably discharged United States Army officer with four years of service, is/was an accomplished physician married to a successful and law abiding Doctor of Dental Medicine with her own practice, who has fathered four minor children whom he adores and actively parents, (particularly now that their mother is back at work) children who are American citizens, as is his wife, and have only known America as their home, whose friends and social networks are American, and a man who in the best tradition of the American dream, built up substantial business enterprise prior to encountering difficulties. He should have been released on conditions, the Magistrate's initial stated reaction at the close of the Hearing.

The first "damaging" fact which the Magistrate detailed and considered was that the defendant bought a ticket on very short notice to Egypt. He wife tells you in her letter to the Court attached hereto as Exhibit 2, and which comprehensively describes the defendant and his life, that buying the ticket on short (one day) notice is exactly the way she herself travelled a couple of months prior to her husband's trip. It was bought on short notice, from Egypt, because, given the turmoil in Egypt, governmental offices are only sporadically open and that it was necessary for their family in Egypt to monitor the openings and closings and obtain an airline ticket as soon as they ascertained when a particular office would be open that would take care of the business that Dr. Mashali needed to get done. Parenthetically, both she and her husband had travelled to Egypt for business purposes in prior months but well within the period of this federal investigation, and of course, both returned to the United States uneventfully.

4

Again, it should be stressed that his reasons for going were business in nature. He had to reopen his flow of the money from the Egyptian investments they had liquidated to pay for their lawyers and accountants in the United States. He had already repatriated a great deal of the Egyptian investment money. He also needed to be there in person to access his retirement account, with an approximately extra 10% if he could demonstrate that he was a doctor-hence the photos, diploma, etc., per Noha Mashali's letter, Exhibit 2.

None of this suggests that he is a "risk of flight". Were he planning to flee, he would have been sending money out of the United States, not bringing it back in to pay the cadré of lawyers and accountants he wouldn't need unless he were staying right here. Certainly paying the last of his liquid funds to them, if he were planning to flee, would make absolutely no sense whatsoever.

The second, purportedly damaging factor found by the Magistrate was that Dr. Mashali had lost his medical license, couldn't practice medicine in the United States, so was travelling to Egypt where perhaps he would practice as a doctor even with a suspended United States license - is equally inaccurate and purely speculative. Doctors in Egypt are lucky to make $15,000 U.S., annually, even assuming you could find a job, which would be problematic under the best of circumstances and impossible with a license suspended in any jurisdiction. The National Practitioner Data Bank, which reports all such license suspensions, is utilized throughout the world, although a simple Google search, which also prominently features Dr. Mashali's

5

problems, would probably have had the same effect of precluding him finding a job as a physician anywhere in Egypt.

Thus, the defendant's attempted trip to Egypt occurred at the last minute because it had to occur when the proper government office would be open, which is a last minute decision these days in Egypt. And was to obtain retirement funds (with a 10% bonus for doctors) and to deal with a resumption of the flow of liquidated investment proceeds to the United States largely for payment of his designated legal and accounting team. Again, this demonstrates that he is <u>not</u> a risk of flight, rather than he is. He is staying here to fight, and hopefully resolve his problems.

The Magistrate is troubled by the SA Phelp's Agent's testimony that the defendant transferred 1.7 million dollars to Egypt, to <u>inter alia,</u> to purchase a home. In reality, $375,000 was sent to Egypt over the years for an investment in "Digital Ear", (again, see Noha Mashali's letter) for a showcase property to exhibit electronic wares for business - not to purchase a homesite for himself and his family . And $1.3 million was sent over time to an Egyptian company named, Northern Rhode Island Medical Group, in Cairo, which was to pay for ongoing transcription and billing for his Massachusetts and Rhode island pain clinics, for less money and using better-educated, quality individuals than are available in the United States. And as stated above, it should be reiterated that the $375,000 investment in "Digital Ear" had been sold, and almost all of the proceeds repatriated to the United States to pay for his legal and accounting battles here in the criminal, civil, Department of Labor, Boards of Registration in Medicine. These expenditures are amply demonstrated in property documents, reflecting the sale of the "Digital Ear" properties, Western Union receipts of the payments being sent back to the United

States (Exhibit 2) and seven years of business receipts of Rhode Island Medical Group. He would not be doing this, particularly given his limited funds, if he were planning to leave! Such people don't bring back their money to the United States as Mashali has done, and still is doing, and they don't hire multiple attorneys (in Boston, Jeffrey Denner and 2 associates, Bill Hanlon, Esq., Mark Adams, Esq.,) and two in Rhode Island attorneys to also deal with Board of Registration and various accountants).

Magistrate Sorokin has also concluded that the Mashalis pose a "risk of flight" because of their considerable assets. There are no considerable assets. Any notion that they had available assets/wealth other than their residence to be pledged as bail collateral (owned in trust) is clearly contradicted by the letters of Noha Mashali, the affidavits of William Hanlon, Esq., attached as Exhibit 3, of accountant David Corbett attached as Exhibit 4, and the affidavit of Mark Adams, Esq., attached as Exhibit 5, which collectively tell you that all of the Mashalis' real estate were either foreclosed in bankruptcy or so cross collaterized as to render them worthless. As were the "luxury" automobiles which have no aggregate value either.

Again, the reality of their asset/wealth calculus, including the ability to acquire rapid wealth (<u>vice</u> a survival amount to pay for housing, 4 kids, and necessaries) does not paint a picture of "masters of the universe" posing a risk of flight. Again, quite the opposite.

Nor is it alleged, or controverted, that Dr. Mashali does not pose a risk of danger to the community or anyone therein. Thus, the sole factor supporting the government's request to detain is "risk of flight". And, it is respectfully suggested that the government cannot sustain its

7

burden to prove risk of flight by preponderance of the evidence in light of the reliable information now proffered to this court. Accordingly, the Magistrate's order of dentention should be revoked and it should be ordered that Dr. Mashali be released to his home and his family, be permitted to get effective medical treatment outside the prison setting[3] and be put in a position to effectively assist his attorneys in the defense of this complex and somewhat voluminous criminal case.

Finally, Magistrate-Judge Sorokin, at page 6 of Memorandum and Order, under the section entitled "Law"; sets out the relevant factors used in determining whether or not there is any condition or combination of conditions that would reasonably assure the appearance of the defendant's as required as well as the safety of any other person and the community. The Bail Statute directs consideration of the following factors, an analysis of which, your undersigned strongly suggests, militates in favor of release:

> **(1) The nature and circumstance of the offense charge, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device.**

Clearly, none of the categories apply to the circumstances of Dr. Mashali.

> **(2) The weight of the evidence against the person.**

Though we have received very limited discovery thus far, it is respectfully suggested that the within case is defensible. It is largely built upon the testimony of disgruntled

---

[3] Dr. Mashali has lost approximately 50 pounds since his incarceration, despite his eating regularly. According to Dr. Mashali and his wife, he is suffering from Systematic Inflammatory Response Syndrome (SIRS) as well as incipient renal failure, which dramatically reduces his urine output. He is also having difficulty breathing. None of the foregoing can be treated effectively in the prison context, particularly when compared to the continuing treatment Dr. Mashali had been and will again be receiving back in the community.

8

employees who themselves were in a legal battle, or about to be involved in a legal battle with their boss, Dr. Mashali. It is instructive that commercial insurers vetted Dr. Mashali's circumstances thoroughly, including billing practices, and gave him a relatively clean bill of health, as did the Bankruptcy Court and to some extent, the Department of Labor. Additionally, it must also be remembered that when Dr. Mashali chose to attempt to fly to Egypt, he had not yet been charged with any criminal offense and under no legal constraint not to go. The case against Dr. Mashali is based on the testimony of some former patients as well, who will themselves ultimately turn out to be less than credible.

**(3) The history and characteristics of the person including:**

**(A) the persons character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings,**

As a physician, husband, father, successful entrepreneur for many years, long time esteemed member of the community, no history relating to drug or alcohol abuse or criminal activity, I would respectfully suggest that Dr. Mashali scores very highly in this category as well.

**(B) Whether at the time of current offense, or arrest the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law.**

As the answer would be "no" to all of these, Dr. Mashali again presents as an individual who does not pose a "great risk of flight".

9

**(4) The nature and seriousness of the danger to any person or the community that would be posed by the persons' release.**

This is clearly not an issue and has not been asserted as one. It is noteworthy, that Dr. Mashali had been uncharged in the Federal criminal investigation and was allowed to remain free under no limitation until he attempted to fly to Egypt to conduct business.

## CONCLUSION

The government has not proven by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure Dr. Fathalla Mashali's appearance in court as required, for all of the reasons stated, supra. And the proposed conditions for release, particularly the posting of virtually all of the Mashali's worth in the world, (the Dover, Massachusetts home with approximately $2,000,000 in equity); wearing a GPS bracelet and being effectively under house arrest when not working (if applicable); going for medical care; going to his lawyers' offices; or doing childcare while wife employed; wife Noha acting as third party guarantor/custodian reporting any violations of condition of release; Dr. Mashali reporting in person or by phone to Pre-Trial Services, as required; random visits by Pre-Trial Services; random testing by Pre-Trial Services for alcohol or drugs and to be required to remain alcohol and recreational drugfree; and any other conditions deemed necessary by this court - will assure his presence as required at court. This is particularly true, where as here, the factors relied on by the Magistrate to order detention were based on the speculations and misconceptions which are now hopefully clarified by the by the materials proffered in this Memorandum.

Dated: April 4, 2014                  Respectfully submitted,
FATHALLA MASHALI
By and through his attorneys,

/s/ *Jeffrey A. Denner*
Jeffrey A. Denner, BBO#120520
J. A. Denner & Associates, P.C.
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114
Tel.: (617) 227-2800
Fax: (617) 973-1562
jdenner@dennerlaw.com

### Certificate of Service

I, Jeffrey A. Denner, hereby certify that on this the 4th day of April 2014, I caused a true copy of the foregoing *Defendant's Memorandum in Support of Motion for Revocation of Magistrate Judge's Order of Detention* to be served upon all necessary parties by virtue of electronically filing the same via the CM/ECF system.

/s/ *Jeffrey A. Denner*
Jeffrey A. Denner